UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

**FILED**
IN CLERKS OFFICE

DOCKET NO.:

2004 FEB -6  A  9: 34

RECEIPT # HCH 202
AMOUNT $ 150.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. S Jones
DATE 2-6-04

AIDA GONZALEZ
ANTONIO GONZALEZ
MILBIA VAZQUEZ
ANTHONY GONZALEZ
ALEXIS GONZALEZ
ALEXANDER GONZALEZ
ADRIAN GONZALEZ
Plaintiffs

U.S. DISTRICT COURT
DISTRICT OF MASS.

04 - 40018

V.

CITY OF FITCHBURG
EDWARD GALLANT, CHIEF OF POLICE
LINDA SWEARS
MICHAEL SEVIGNY
JEFFREY HOWE
KERRY SIOMOS, JR.
MATTHEW DIBARA
ALAN ROSS
THOMAS DAOUST
MASSAMONT INS. AGENCY, INC. and/or METROGARD INS. and/or DIPLOMAX
INS. and/or LEGION INS. COMPANY
Defendants

---

COMPLAINT AND JURY DEMAND

---

INTRODUCTION

This a Civil Rights action in which the Plaintiffs are seeking damages from the

City of Fitchburg, its Chief of Police and several of its Police Officers. The Plaintiffs are

residents of Fitchburg, MA that were attacked and beaten in and around their family

home by officers of the Fitchburg Police Department. The Plaintiffs are seeking damages

from the individual officers for their part in the beatings, from the City of Fitchburg and

its Chief of Police for failure to properly train, supervise and discipline their officers and

the City's Insurance provider for unfair and deceptive acts and practices in the settlement of insurance claims. The Plaintiffs also seek damages under the Massachusetts Civil Rights Act and the Common Law of Massachusetts.

## JURISDICTION

The Plaintiffs bring this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. s. 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Massachusetts. Jurisdiction in the Federal District Court is based on 28 U.S.C. ss. 1331 and 1334(3) and supplemental jurisdiction is accorded by 28 U.S.C. s. 1367 over Plaintiffs state law claims that share common operative facts with the Plaintiffs federal causes of action.

## PARTIES

1.     The Plaintiff Aida Gonzalez is a citizen of the United States and at all times relevant to this complaint was a visitor at the home of her son, Plaintiff Antonio Gonzalez in Fitchburg, County of Worcester, Massachusetts.

2.     The Plaintiff Antonio Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

3.      The Plaintiff Milbia Vazquez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

4.     The Plaintiff Anthony Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

5.    The Plaintiff Alexis Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

6.    The Plaintiff Alexander Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

7.    The Plaintiff Adrian Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

8.    The Defendant City of Fitchburg (the City) is a municipality incorporated and governed under the laws of the Commonwealth of Massachusetts, located in Worcester County, Massachusetts. At all times relevant to this complaint, the City employed the police officer Defendants named in this complaint and was insured by the insurance carrier Defendant named in this complaint.

9.    The Defendant Edward Gallant (Chief of Police Gallant), upon information and belief, was at all times relative to the facts in this case the Chief of Police in the City of Fitchburg. As such he has overall responsibility for all aspects of the management of the Fitchburg Police Department and he is specifically responsible for and has final policy-making authority with respect to the selection, training, supervision and discipline of the officers of the Fitchburg Police Department including the police officer Defendants named in this complaint.

10.   The Defendant Linda Swears (Sgt. Swears) at all times relevant to the facts in this complaint was a duly appointed police officer and Sergeant for the Fitchburg

Police Department and was the supervising officer on the scene at the Gonzalez home on the night of the events that form a basis of this complaint. She is being sued in her individual capacity.

11. The Defendant Michael Sevigny (Officer Sevigny) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

12. The Defendant Jeffrey Howe (Officer Howe) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

13. The Defendant Kerry Siomos, Jr. (Officer Siomos) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

14. The Defendant Matthew Dibara (Officer Dibara) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

15. The Defendant Alan Ross (Officer Ross) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

16. The Defendant Thomas Daoust (Officer Daoust) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

17.   The Defendant Timothy McDermott (Officer McDermott) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

18.   The Defendant Massamont Ins. Agency, Inc. and/or Metrogard Ins. and/or Diplomax Ins. and/or Legion Ins. Company, upon information and belief, is a duly licensed insurance carrier(s), licensed to provide insurance coverage to municipalities in the Commonwealth of Massachusetts who at all times relevant to this complaint provided insurance coverage to The City of Fitchburg.

FACTS

19.   On November 19, 2001 officers of the Fitchburg Police Department arrived at 20 Simonds Street in the City of Fitchburg to execute a search warrant for Steven Omar Gonzalez and a gun he was alleged to possess.

20.   Steven Omar Gonzalez was a relative of the Gonzalez family visiting the city from Puerto Rico.

21.   The officers arrived at 20 Simonds Street in multiple marked police cars.

22.   Alexander Gonzalez, 16, noticed the cars arrival and went to the window.

23.   A police officer, upon information and belief Officer Sevigny, noticing Alexander in the window, called to him and asked him if Steven Omar Gonzalez was home.

24.   "Steven is not here", Alexander told him.

25.   Tell him to come down, we have some papers from school for him, Officer Sevigny replied.

26. Alexander repeated that Steven was not there. He then called downstairs to his mother, Milbia Vazquez, telling her that the police where here looking for Steven. Milbia Vazquez went to the door.

27. Coincidentally Milbia Vazquez had been heading to the door to drive Jessica Valente, a visitor, home. She opened the door within seconds.

28. She was met by Sgt. Swears and Officers Sevigny, Ross, Siomos and Dibarra.

29. Officer Sevigny informed her that they had a search warrant for Steven Omar Gonzalez. Milbia Vazquez told them to come in. She asked him what Steven had done. Officer Sevigny told her: "He shot a Hispanic boy."

30. Milbia Vazquez said "Oh my God!" She told Officer Sevigny that Steven was not there and that she didn't know where he was.

31. Alexander came down stairs to see what was going on and appeared beside his mother. When Officer Sevigny saw him he yelled "Steven!" and lunged at him, grabbing him by the neck and throwing him to the floor, slammed his face into the floor and put him in handcuffs.

32. Milbia Vazquez screamed when she saw her son attacked and told Officer Sevigny: "That's not Steven, that's my son Alexander!" She was ignored.

33. The other officers raced past her into the house.

34. Officer Sevigny then pulled Alexander up by the handcuffs, bending his arms back painfully. He pushed Milbia Vazquez out of the way and through Alexander onto the floor in the entry-way and ordered him to remain there.

35. While this was occurring an officer, upon information and belief, Officer Siomos, entered the family bathroom.

36.    Alexis Gonzalez, 17, was inside the bathroom urinating when the officer entered. Thinking the intruder was a family member Alexis called back over his shoulder for whom ever it was to wait.

37.    The officer told him: "Put your hands up!" Alexis looked back over his shoulder and saw the police officer pointing a gun at him. The officer called him "Steven" and "Omi" and yelled for him to put his hands up.

38.    Alexis complied. The officer screamed at him: "Hands against the wall!"

39.    Alexis reached down to put himself back into his pants. When he did the officer put his gun to Alexis' head and screamed: "I said hands against the wall!"

40.    Alexis complied. He was then handcuffed and shoved out into the hallway and thrown to the floor. Officer Sevigny was there with Alexander and he yelled for Alexis to stay put when he hit the floor.

41.    While the events in the bathroom where taking place Officer Sevigny had gone into the living room where he found Milbia Vasquez husband, the boy's father, Antonio Gonzalez, 42, laying on the couch watching television.

42.    Officer Sevigny pulled Antonio Gonzalez off the couch onto the floor. He handcuffed him, then kicked him and told him not to move.

43.    Aida Gonzalez, 61, Antonio's mother and the grandmother of the boys, was also in the living room watching television with her son. She watched as Officer Sevigny then brought Alexander into the room and threw him on the floor next to his father.

44. Aida Gonzalez was visiting with the family from Puerto Rico. She suffers with a bad heart and was in the area to have medical treatment. She was becoming distressed as she watched these events.

45. At or about this time 14 year old Adrian Gonzalez, who had been upstairs in his room doing homework, started down the stairs to see what all the commotion was about. He called out: "What's going on?"

46. Immediately Officers Sevigny and Ross rushed him calling him "Steven". His legs were pulled out from underneath him and he smashed down hard, hitting his face on the stairs. He was maced and dragged down the stairs where he was handcuffed.

47. Adrian was screaming, "Mommy, I can't see, I can't breath!" Officer Ross was kneeling on his back telling him to stop squirming.

48. Milbia Vazquez was screaming at the officers: "That's my son, Adrian, not Steven, he has asthma, you'll kill him!"

49. Officer Sevigny grabbed her by the shirt and said: "Shut up, do you want me to arrest you!" Milbia Vazquez responded: "Yes. Arrest me, but leave my children alone." At this point Officer Sevigny was told by Sgt. Swears to take his hands off of Milbia Vazquez.

50. Adrian was dragged to his feet and taken around the corner and thrown to the floor in the entry way next to his brother, Alexis.

51. Alexis had been trying to tell the other officers that he had identification that would prove he was not Steven. One of the other officers had told him to get up. When Officer Sevigny came around the corner and saw Alexis standing he said:

"I told you to stay down!" He then punched Alexis in the head, knocking him to the floor. He then grabbed him by the neck and slammed his head into the door jam. None of the other officers intervened.

52. Alexis and Adrian where then taken out and locked into the back of a police car.

53. Adrian was crying for water and Milbia Vazquez was pleading with the officers to get him some. They denied her request and told her that the effects of the mace would wear off in about thirty minutes.

54. Aida Gonzalez distress had increased to the point that she was now gasping, shaking and turning blue. Milbia Vazquez had been requesting that an ambulance be called for her, but her requests had been ignored. Officer Sevigny wanted to know why she and 15 year old Jessica Valente were not in handcuffs.

55. Milbia Vazquez slipped upstairs and called her son Anthony on the phone.

56. Anthony Gonzalez, 22, lived with his wife and newborn baby several streets away. He had left his car at 20 Simonds Street with his mother in case they had to rush Aida to the hospital. Anthony had the families only car.

57. Milbia Vasquez was frantic and told Anthony that the police were there and that his grandmother was very sick and that the police would not call an ambulance for her. She asked Anthony if he could come down and take her to the hospital.

58. Anthony agreed and left his house running for 20 Simonds Street.

59. Downstairs the officers had finally decided that the condition of Aida Gonzalez was serious had called for an ambulance.

60. When the ambulance arrived Milbia Vazquez and Jessica Valente went outside while Aida Gonzalez was taken out and placed inside it.

61.    At this point Anthony Gonzalez arrived. He was out of breath and sweating from his run.

62.    He was immediately rushed by several officers including, upon information and belief Officers Howe, Siomos, Daoust and Ross, and perhaps Sgt. Swears. He was called "Steven" and "Omi". He was thrown against a wire fence, cutting his hands. He attempted to cooperate with the officers but they seemed to him to be in a frenzy. He attempted to show them identification to show that he was not Steven Omar Gonzalez but before he could he was struck, maced, handcuffed and arrested.

63.    Again Milbia Vasquez was trying to tell them that this was not Steven, but her son Anthony who was coming to help Aida Gonzalez. Again She was ignored.

64.    At the police station Anthony Gonzalez was made sport of by the police officers. He was suffering from the effects of the mace and couldn't see. He asked to be able to wash out his eyes. One officer tapped on the eye wash station and taunted him to try and find his way to the water by sound.

65.    Alexis and Adrian Gonzalez were transported in a different police unit than Anthony.

66.    Adrian was still crying. He was telling his brother that he couldn't see or breath very well and asking Alexis if he was going to die. Alexis was trying to reassure him, telling him it was going to be alright. They were speaking in Spanish, their first language.

67.    The officer driving the police unit, upon information and belief Officer Howe, told them there would be no speaking Spanish in his car.

68.  Alexis was astonished. "I don't have a right to speak to my brother in my own language?" he said.

69.  Officer Ross said: "You want your rights?" He then accelerated the car for a distance and then slammed on the brakes, launching the brothers into the glass partition between the front and back seats. "There's your rights," he told them.

70.  At the police station both boys were asked if they were gang members and Adrian was asked if Anthony was their gang leader. Both denied any affiliation with gangs.

71.  When Anthony was finally allowed to present identification to show that he was not Steven Gonzalez they harassed him as to why he had so much identification.

72.  On November 20, 2001 at approximately 5:30 PM a police officer, upon information and belief Officer Ross, returned to 20 Simonds Street. Milbia Vazquez met him on the porch outside her home.

73.  The officer said: "I'm sorry for what happened last night. What happened last night should never have happened."

74.  Milbia Vazquez was frightened. She didn't know what might happen next. She made no response. After a time the officer left.

75.  Also on November 20, 2001 17 year old Alexis Gonzalez was talking with friends on a street corner in Fitchburg when Officer Sevigny pulled up in a police car. He got out of the car and approached the young people. He addressed himself to Alexis. "Did you tell your friends what I did to you last night?" he inquired. "Make sure they know that the same thing can happen to them."

76.    Later on November 20, 2001 State Police Troopers showed up at 20 Simonds

Street. They told Milbia Vazquez that they wanted to talk to her children about

their affiliation with the "Latin Kings". She was terrified and asked them to leave,

which they did.

77.    On November 25, 2001 Anthony Gonzalez was stopped by the Fitchburg Police

on his way home from work. They demanded to see his license and registration.

Although everything was in order he was arrested for unlicensed operation of a

motor vehicle. His vehicle was towed and searched. Nothing was found. The next

day the charges against him were dismissed at arraignment.

78.    Steven Omar Gonzalez was not at 20 Simonds Street on November 19, 2001.

When he was told of the events that occurred he immediately went to the police

station and presented himself. He was charged with assault and battery with a

dangerous weapon, to wit, a gun. A jury at his trial found that there was no gun.

79.    The charges of disorderly conduct and resisting arrest against Anthony, Alexis

and Adrian Gonzalez were dismissed without a plea or a finding.

<u>COUNT ONE</u>

VIOLATION OF 42 USC s.1983
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

80.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 79 and incorporates them by reference as if fully set forth herein.

81.    The unprovoked attacking, seizing, detaining, beating and maceing of the

Plaintiffs by the Defendant officers constituted the use of excessive and

unreasonable force in violation of the Plaintiff's rights guaranteed by the United

States Constitution, including but not limited to the First, Fourth, Fifth and Fourteenth Amendments.

82. When the Defendant Officers attacked the Plaintiffs they intended to inflict, and did inflict serious physical and emotional injuries of the Plaintiffs.

83. The Defendant officers operated together in inflicting the Plaintiffs injuries and are therefore jointly liable to the Plaintiffs.

84. The Defendant officers used excessive force during the arrest of the Plaintiffs and are therefore jointly liable to them for their damages. Such excessive force included but is not limited to intentionally slamming on the brakes during transport of the Plaintiffs to the police station with the specific intent of inflicting injury. Such excess force also includes kicking a handcuffed Plaintiff, punching a handcuffed Plaintiff as well as maceing and beating Plaintiffs who were cooperating with them and denying medical attention to a suffering Plaintiff in their control.

COUNT TWO

SUPERVISORY LIABILITY AGAINST SGT. SWEARS, CHIEF GALLANT AND THE CITY OF FITCHBURG

85. The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 84 and incorporates them by reference as if fully set forth herein.

86. Sgt. Linda Swears describes her duties on the night of November 19, 2001 at 20 Simonds Street as that of "Street Supervisor."

87. Chief of Police Edward Gallant, on the night of November, 19, 2001 and at all times relevant to this complaint, had overall supervisory authority over Sgt.

Swears and all the officers who participated in the unlawful acts perpetrated

against the Plaintiffs at 20 Simonds Street.

88.    The City of Fitchburg placed its authority and police power in Chief of Police

Gallant and "Street Supervisor" Sgt. Swears.

89.    In such capacity Sgt. Swears displayed a deliberate, reckless or callous

indifference to the Constitutional Rights of the Plaintiffs by her failure to take

control of the situation in which police officers under her control inflicted

unnecessary physical and emotional pain on the Plaintiffs. Sgt. Swears stood by

while the Defendants were subjected to excessive force in violation of the rights

guaranteed to them under the Constitution of the United States and the

Commonwealth of Massachusetts.

COUNT THREE

WRONGFUL ARREST
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

90.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 89 and incorporates them by reference as if fully set forth herein.

91.    The Defendant officers had neither probable cause or reasonable grounds to arrest

the Plaintiffs Anthony, Alexis and Adrian Gonzalez at the time they were taken

into custody and therefore violated their rights under the Fourth Amendment.

COUNT FOUR

FALSE IMPRISONMENT
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

92.  The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 91 and incorporates them by reference as if fully set forth herein.

93.  The Defendant officers had neither probable cause or reasonable grounds to handcuff the Plaintiffs Antonio, Anthony, Alexis, Alexander and Adrian Gonzalez and therefore violated their rights under 42 USC s. 1983 and the Fourth and Fourteenth Amendments by depriving them of their liberty.

COUNT FIVE

ASSAULT AND BATTERY<br>AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS<br>DAOUST AND SWEARS

94.  The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 92 and incorporates them by reference as if fully set forth herein.

95.  The Physical abuse and assault and battery on the Plaintiffs by the Defendant officers which took place in and around 20 Simonds Street was not warranted and violated the Plaintiffs rights as protected by the Fourth and Fourteenth Amendments, the Massachusetts Declaration of Rights and the Common Law of the Commonwealth of Massachusetts.

COUNT SIX

MALICIOUS PROSECUTION<br>AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS<br>DAOUST AND SWEARS

96.  The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 95 and incorporates them by reference as if fully set forth herein.

97.  The Defendant officers caused Plaintiffs Anthony, Alexis and Adrian Gonzalez to be falsely prosecuted for crimes they did not commit.

98.   The Defendant officers were aware that no probable cause existed to arrest the Plaintiffs Anthony, Alexis and Adrian Gonzalez for the crimes with which they were charged.

99.   All charges against the Defendants Anthony, Alexis and Adrian Gonzalez were subsequently dismissed without a plea or a finding.

100.  The motivations of the Defendant officers behind the false and malicious prosecution of Anthony, Alexis and Adrian Gonzalez included but may have not been limited too their desire to cover their own violations of law as set forth herein.

COUNT SEVEN

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

101.  The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 100 and incorporates them by reference as if fully set forth herein.

102.  When the Defendant officers assaulted and attacked the Plaintiffs as described herein they intended to inflict emotional distress, or they knew or should have know that emotional distress was the likely result of their conduct.

103.  The acts of brutality, coercion and intimidation inflicted by the Defendant officers, acting under the color of law, are an extreme, callous and outrageous abuse of power, beyond the pale of reasonableness in civilized society. Such acts are intolerable and would shock the conscience of any community.

104.  As a result of the conduct of the Defendant officers the Plaintiffs have suffered and continue to suffer extreme emotional distress and anxiety. Consequently, the

Defendant officers are jointly liable to the Plaintiffs for intentional infliction of emotional distress.

## COUNT EIGHT

### ABUSE OF PROCESS
### AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS DAOUST AND SWEARS

105.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 104 and incorporates them by reference as if fully set forth herein.

106.    The Defendant officers abused their positions and used process for an ulterior and/or illegitimate purpose by arresting the Plaintiffs Anthony, Alexis and Adrian Gonzalez in order to cover their own violations of law. Such purpose was other than that for which it was designed or intended and such abuse of position and process resulted in damage to the Plaintiffs.

## COUNT NINE

### VICARIOUS LIABILITY AGAINST DEFENDANT EDWARD GALLANT

107.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 106 and incorporates them by reference as if fully set forth herein.

108.    The Plaintiffs assert that under the broadest principles of vicarious liability the Defendant Chief Edward Gallant, as a matter of policy and practice has shown deliberate indifference to the rights and immunities of the citizens who come into contact with his police officers in the City of Fitchburg. Plaintiffs allege that the Fitchburg Police are particularly indifferent to the rights of Hispanic citizens.

109.    Defendant Chief Edward Gallant is the chief policy maker for the Fitchburg Police Department and as such he has allowed it to become, or knew or should

17

have known that it had become the custom and practice of Fitchburg police officers, including but not limited to those named in this complaint, to be physically, verbally and mentally abusive with citizens that they come into contact with while performing their duties. The Plaintiffs allege that this indifference is clear in the Hispanic Community.

110.	The Defendant Chief Edward Gallant was aware of complaints filed against officers of the Fitchburg Police Department, formal and informal, public and private, including but not limited to some of the officers charged in this complaint, and has shown a deliberate indifference to the fact that police officers under his charge are violating the Civil Rights of citizens in his community. The Plaintiffs allege that a majority of the complaints filed are by Hispanic or other minority Complainants and as such are ignored as a matter of policy and or custom as a result of deliberate indifference.

111.	Despite the fact that he has been aware situations leading to complaints against officers of the Fitchburg Police Department, the Defendant Chief Edward Gallant failed to promulgate and/or enforce regulations to restrict police officers from being physical with individuals they come in contact with in the course of their duties.

112.	As a result of the Defendant Chief Edward Gallant deliberate indifference to the abusive actions of the officers under his charge, formal and through investigations of allegations of police brutality are not performed. The Plaintiffs allege that this is plainly evident with regard to Complaints filed by minorities.

113.   The failure of Defendant Edward Gallant to perform his duties effectively as a

       policy maker for the Fitchburg Police Department, by actions and/or omissions

       while acting under the color of state law, he has deprived the Plaintiffs of their

       rights, privileges and immunities under the laws and Constitution of the United

       States, including but not limited to the right to be secure in their person and

       property, to be free from excessive use of force and to be free from the imposition

       of punishment without having been convicted of a crime.

COUNT TEN

MUNICIPAL LIABILITY AGAINST THE CITY OF FITCHBURG PURSUANT TO 42
U.S.C. s. 1983

114.   The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

       through 113 and incorporates them by reference as if fully set forth herein.

115.   Prior to the time of the events described in this Complaint, the Defendant City of

       Fitchburg maintained or permitted and acquiesced in policies or customs which

       constituted deliberate indifference to the Constitutional rights of citizens of the

       City of Fitchburg, which resulted in the deprivation of the Plaintiffs rights as set

       forth herein.

116.   The Defendant City of Fitchburg failed to properly supervise its police officers,

       failed and neglected to investigate complaints of police misconduct or

       inadequately and improperly investigated complaints of police misconduct and

       tolerated and condoned a policy of violence and abuse by its police officers.

117.   The Defendant City of Fitchburg through it elected and appointed officials knew

       or should have known the number of instances of the use of excessive force or

other misconduct of its police officers, but despite such knowledge failed to correct and address the problem thereby constituting deliberate indifference to the rights of the citizens of the City of Fitchburg, including these Plaintiffs.

118.   The policies and customs, or the lack thereof, alleged herein and the willingness of the City of Fitchburg to condone the same, were the cause of the injuries suffered by the Plaintiffs and were the cause of the deprivation of the rights suffered by the Plaintiffs in violation of 42 U.S.C. s. 1983.

COUNT ELEVEN

NEGLIGENCE<br>
AGAINST THE DEFENDANT CITY OF FITCHBURG, DEFENDANT CHIEF<br>
EDWARD GALLANT AND DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS,<br>
DIBARRA, ROSS DAOUST AND SWEARS

119.   The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 118 and incorporates them by reference as if fully set forth herein.

120.   The Plaintiffs state that a notice of claim was provided to the Executive Officer of the City of Fitchburg pursuant to MGL c. 258 s. 4 on or about August 1, 2002 and six months has passed since the date of such notice of claim was served upon said Executive Officer without response from the City of Fitchburg and that at this time this claim of negligence is ripe and the Plaintiffs make this claim for relief.

121.   The Defendant police officers owe a duty to these Plaintiffs and all the citizens of the City of Fitchburg to use only reasonable force to apprehend suspects and to refrain from the use of excessive force when doing so.

122.   The Defendant police officers breached their duty to the Plaintiff citizens when they used excessive force in beating, maceing, detaining, handcuffing, subduing, threatening and intimidating them.

123.    The Defendant Chief Edward Gallant and the Defendant City of Fitchburg owe a
duty to the citizens of the City of Fitchburg to properly train and supervise their
police officers in the use of force and intervention in the use of excessive force by
other police officers.

124.    Such Defendants breached their duty and the direct and proximate cause of their
breach was the harm herein described to the Plaintiffs.

125.    The Defendant Chief Edward Gallant and the Defendant City of Fitchburg are
liable to the Plaintiffs for the negligent actions of their employees.

COUNT TWELVE

VIOLATION OF MGL c. 93A BY DEFENDANT MASSAMONT INS. AGENCY, INC.
and/or METROGARD INS. and/or DIPLOMAX INS. and/or LEGION INS. COMPANY

126.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1
through 125 and incorporates them by reference as if fully set forth herein.

127.    The Defendant Massamont Ins. Agency, et.al. has employed unfair and deceptive
acts in violation of MGL c. 93A s. 11 and c. 176D s. 9(3). Such acts include but
are not limited to: failing to adopt reasonable standards for the prompt
investigation and settlement of claims arising under its policy; failing to effectuate
a prompt, fair and equitable settlement of the Plaintiffs claims; compelling its
insured to institute suit to recover amounts due; unreasonably delaying payment
of claims and misleading the Plaintiff about its coverage.

128.    The Defendant has demonstrated a lack of good faith in dealing with the Plaintiff
and has acted unscrupulously.

129.    The Defendants actions were knowing and willful.


## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

1.    Use its fulles equitable powers to order the individual Defendants:

    a.    to use only reasonable force in the performance of their duties.

    b.    To intervene when excessive force is used by other police officers in the course of an arrest, and

    c.    To report to superiors the use of, and injures caused during the use of excessive force;

    d.    To write complete and truthful police reports;

2.    Use its fullest equitable powers to order the City of Fitchburg, acting through its officials, to institute appropriate police training, supervisions and disciplinary actions that will require and promote:

    a.    Only the use of reasonable force by police officers;

    b.    The intervention of police officers when they observe other officers engaged in the use of excessive force;

    c.    Police officers reporting injuries resulting from any use of excessive force;

3.  Use its fullest equitable powers to order the City of Fitchburg, acting through its officials, to institute appropriate police training and procedures for the use of force against the City's citizens.

4.  Order Judgement in the Plaintiffs favor in the amount of Fourteen Million Dollars ($14,000,000), Two Million Dollars ($2,000,000) to each Plaintiff to compensate them for their pain and suffering.

5.  Order such punitive damages as are allowed by law.

6.  Order payment of interest, costs and fees.

7.  Order such further relief as this Court deems fair and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all counts.

The Plaintiffs
By Their Attorney


Edwin J. Attella
BBO# 636527
PO Box 255
West Boylston, MA 01583
Telephone: (508) 835-5881

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 - 40018

1. Title of case (name of first party on each side only)   Aida Gonzalez v. City of Fitchburg

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

FILED
IN CLERKS OFFICE

___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

_x_ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     2004 FEB -6  A  9: 34
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       *Also complete AO 120 or AO 121
                                                                              for patent, trademark or copyright cases

                                                                              U.S. DISTRICT COURT
___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,         DISTRICT OF MASS.
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

___ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

___ V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐         NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

YES ☐         NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐         NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐         NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☒         NO ☐

   A.    If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☐         Central Division ☒         Western Division ☐

   B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐         Central Division ☒         Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

YES ☐         NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Edwin J. Attella

ADDRESS   PO Box 255, 27B Sterling St., West Boylston, MA 01584

TELEPHONE NO.   (508) 835-5881

Coversheetlocal.wpd - 10/17/02)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET    04-40018

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

IN CLERKS OFFICE

## I. (a) PLAINTIFFS

AIDA Gonzalez, Antonio Gonzalez, Milbia Vazquez, Anthony Gonzalez, Alexis Gonzalez, Alexander Gonzalez, Adrian Gonzalez.

## DEFENDANTS

City of Fitchburg, Edward Gallant, Linda Swears, Michael Sevigny Jeffrey Howe, Kerry Siomos, Jr., Matthew DiBara, Daniel Ross, Thomas Daost,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Edwin J. Attella (508) 835-5881
PO Box 255, 27B Sterling St.
West Boylston, MA 01583

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | 42 USC 1983 | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This a Civil Rights action arising out of the attack and beating of the Plaintiffs by the Fitchburg Police in violation 42 USC ss. 1983.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ 14,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  2/6/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____