UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

DOCKET NO.:

2004 MAY 14  A 10: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

AIDA GONZALEZ
ANTONIO GONZALEZ
MILBIA VAZQUEZ
ANTHONY GONZALEZ
ALEXIS GONZALEZ
ALEXANDER GONZALEZ
ADRIAN GONZALEZ
Plaintiffs

V.

CITY OF FITCHBURG
CHARLES TASCA, CHIEF OF POLICE
LINDA SWEARS
MICHAEL SEVIGNY
JEFFREY HOWE
KERRY SIOMOS, JR.
MATTHEW DIBARA
ALAN ROSS
THOMAS DAOUST
MASSAMONT INS. AGENCY, INC. and/or METROGARD INS. and/or DIPLOMAX
INS. and/or LEGION INS. COMPANY
Defendants

---

AMENDED COMPLAINT AND JURY DEMAND

---

INTRODUCTION

This a Civil Rights action in which the Plaintiffs are seeking damages from the

City of Fitchburg, its Chief of Police and several of its Police Officers. The Plaintiffs are

residents of Fitchburg, MA that were attacked and beaten in and around their family

home by officers of the Fitchburg Police Department. The Plaintiffs are seeking damages

from the individual officers for their part in the beatings, from the City of Fitchburg and

its Chief of Police for failure to properly train, supervise and discipline their officers and

the City's Insurance provider for unfair and deceptive acts and practices in the settlement of insurance claims. The Plaintiffs also seek damages under the Massachusetts Civil Rights Act and the Common Law of Massachusetts.

JURISDICTION

The Plaintiffs bring this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. s. 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Massachusetts. Jurisdiction in the Federal District Court is based on 28 U.S.C. ss. 1331 and 1334(3) and supplemental jurisdiction is accorded by 28 U.S.C. s. 1367 over Plaintiffs state law claims that share common operative facts with the Plaintiffs federal causes of action.

PARTIES

1.   The Plaintiff Aida Gonzalez is a citizen of the United States and at all times relevant to this complaint was a visitor at the home of her son, Plaintiff Antonio Gonzalez in Fitchburg, County of Worcester, Massachusetts.

2.   The Plaintiff Antonio Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

3.   The Plaintiff Milbia Vazquez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

4.   The Plaintiff Anthony Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

5.     The Plaintiff Alexis Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

6.     The Plaintiff Alexander Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

7.     The Plaintiff Adrian Gonzalez is a citizen of the United States and at all times relevant to this complaint was a resident of Fitchburg, County of Worcester, Massachusetts.

8.     The Defendant City of Fitchburg (the City) is a municipality incorporated and governed under the laws of the Commonwealth of Massachusetts, located in Worcester County, Massachusetts. At all times relevant to this complaint, the City employed the police officer Defendants named in this complaint and was insured by the insurance carrier Defendant named in this complaint.

9.     The Defendant Charles Tasca (Chief of Police Gallant), upon information and belief, was at all times relative to the facts in this case the Chief of Police in the City of Fitchburg. As such he has overall responsibility for all aspects of the management of the Fitchburg Police Department and he is specifically responsible for and has final policy-making authority with respect to the selection, training, supervision and discipline of the officers of the Fitchburg Police Department including the police officer Defendants named in this complaint.

10.    The Defendant Linda Swears (Sgt. Swears) at all times relevant to the facts in this complaint was a duly appointed police officer and Sergeant for the Fitchburg

Police Department and was the supervising officer on the scene at the Gonzalez home on the night of the events that form a basis of this complaint. She is being sued in her individual capacity.

11.    The Defendant Michael Sevigny (Officer Sevigny) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

12.    The Defendant Jeffrey Howe (Officer Howe) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

13.    The Defendant Kerry Siomos, Jr. (Officer Siomos) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

14.    The Defendant Matthew Dibara (Officer Dibara) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

15.    The Defendant Alan Ross (Officer Ross) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

16.    The Defendant Thomas Daoust (Officer Daoust) at all times relevant to the facts in this case was a duly appointed police officer for the Fitchburg Police Department. He is being sued in his individual capacity.

17.    The Defendant Massamont Ins. Agency, Inc. and/or Metrogard Ins. and/or Diplomax Ins. and/or Legion Ins. Company, upon information and belief, is a

4

duly licensed insurance carrier(s), licensed to provide insurance coverage to

municipalities in the Commonwealth of Massachusetts who at all times relevant

to this complaint provided insurance coverage to The City of Fitchburg.

FACTS

18.    On November 19, 2001 officers of the Fitchburg Police Department arrived at 20

Simonds Street in the City of Fitchburg to execute a search warrant for Steven

Omar Gonzalez and a gun he was alleged to possess.

19.    Steven Omar Gonzalez was a relative of the Gonzalez family visiting the city

from Puerto Rico.

20.    The officers arrived at 20 Simonds Street in multiple marked police cars.

21.    Alexander Gonzalez, 16, noticed the cars arrival and went to the window.

22.    A police officer, upon information and belief Officer Sevigny, noticing Alexander

in the window, called to him and asked him if Steven Omar Gonzalez was home.

23.    "Steven is not here", Alexander told him.

24.    Tell him to come down, we have some papers from school for him, Officer

Sevigny replied.

25.    Alexander repeated that Steven was not there. He then called downstairs to his

mother, Milbia Vazquez, telling her that the police where here looking for Steven.

Milbia Vazquez went to the door.

26.    Coincidentally Milbia Vazquez had been heading to the door to drive Jessica

Valente, a visitor, home. She opened the door within seconds.

27.    She was met by Sgt. Swears and Officers Sevigny, Ross, Siomos and Dibarra.

28.  Officer Sevigny informed her that they had a search warrant for Steven Omar Gonzalez. Milbia Vazquez told them to come in. She asked him what Steven had done. Officer Sevigny told her: "He shot a Hispanic boy."

29.  Milbia Vazquez said "Oh my God!" She told Officer Sevigny that Steven was not there and that she didn't know where he was.

30.  Alexander came down stairs to see what was going on and appeared beside his mother. When Officer Sevigny saw him he yelled "Steven!" and lunged at him, grabbing him by the neck and throwing him to the floor, slammed his face into the floor and put him in handcuffs.

31.  Milbia Vazquez screamed when she saw her son attacked and told Officer Sevigny: "That's not Steven, that's my son Alexander!" She was ignored.

32.  The other officers raced past her into the house.

33.  Officer Sevigny then pulled Alexander up by the handcuffs, bending his arms back painfully. He pushed Milbia Vazquez out of the way and through Alexander onto the floor in the entry-way and ordered him to remain there.

34.  While this was occurring an officer, upon information and belief, Officer Siomos, entered the family bathroom.

35.  Alexis Gonzalez, 17, was inside the bathroom urinating when the officer entered. Thinking the intruder was a family member Alexis called back over his shoulder for whom ever it was to wait.

36.  The officer told him: "Put your hands up!" Alexis looked back over his shoulder and saw the police officer pointing a gun at him. The officer called him "Steven" and "Omi" and yelled for him to put his hands up.

37.   Alexis complied. The officer screamed at him: "Hands against the wall!"

38.   Alexis reached down to put himself back into his pants. When he did the officer put his gun to Alexis' head and screamed: "I said hands against the wall!"

39.   Alexis complied. He was then handcuffed and shoved out into the hallway and thrown to the floor. Officer Sevigny was there with Alexander and he yelled for Alexis to stay put when he hit the floor.

40.   While the events in the bathroom where taking place Officer Sevigny had gone into the living room where he found Milbia Vasquez husband, the boy's father, Antonio Gonzalez, 42, laying on the couch watching television.

41.   Officer Sevigny pulled Antonio Gonzalez off the couch onto the floor. He handcuffed him, then kicked him and told him not to move.

42.   Aida Gonzalez, 61, Antonio's mother and the grandmother of the boys, was also in the living room watching television with her son. She watched as Officer Sevigny then brought Alexander into the room and threw him on the floor next to his father.

43.   Aida Gonzalez was visiting with the family from Puerto Rico. She suffers with a bad heart and was in the area to have medical treatment. She was becoming distressed as she watched these events.

44.   At or about this time 14 year old Adrian Gonzalez, who had been upstairs in his room doing homework, started down the stairs to see what all the commotion was about. He called out: "What's going on?"

45.   Immediately Officers Sevigny and Ross rushed him calling him "Steven". His legs were pulled out from underneath him and he smashed down hard, hitting his

face on the stairs. He was maced and dragged down the stairs where he was handcuffed.

46.  Adrian was screaming, "Mommy, I can't see, I can't breath!" Officer Ross was kneeling on his back telling him to stop squirming.

47.  Milbia Vazquez was screaming at the officers: "That's my son, Adrian, not Steven, he has asthma, you'll kill him!"

48.  Officer Sevigny grabbed her by the shirt and said: "Shut up, do you want me to arrest you!" Milbia Vazquez responded: "Yes. Arrest me, but leave my children alone." At this point Officer Sevigny was told by Sgt. Swears to take his hands off of Milbia Vazquez.

49.  Adrian was dragged to his feet and taken around the corner and thrown to the floor in the entry way next to his brother, Alexis.

50.  Alexis had been trying to tell the other officers that he had identification that would prove he was not Steven. One of the other officers had told him to get up. When Officer Sevigny came around the corner and saw Alexis standing he said: "I told you to stay down!" He then punched Alexis in the head, knocking him to the floor. He then grabbed him by the neck and slammed his head into the door jam. None of the other officers intervened.

51.  Alexis and Adrian where then taken out and locked into the back of a police car.

52.  Adrian was crying for water and Milbia Vazquez was pleading with the officers to get him some. They denied her request and told her that the effects of the mace would wear off in about thirty minutes.

53.   Aida Gonzalez distress had increased to the point that she was now gasping, shaking and turning blue. Milbia Vazquez had been requesting that an ambulance be called for her, but her requests had been ignored. Officer Sevigny wanted to know why she and 15 year old Jessica Valente were not in handcuffs.

54.   Milbia Vazquez slipped upstairs and called her son Anthony on the phone.

55.   Anthony Gonzalez, 22, lived with his wife and newborn baby several streets away. He had left his car at 20 Simonds Street with his mother in case they had to rush Aida to the hospital. Anthony had the families only car.

56.   Milbia Vasquez was frantic and told Anthony that the police were there and that his grandmother was very sick and that the police would not call an ambulance for her. She asked Anthony if he could come down and take her to the hospital.

57.   Anthony agreed and left his house running for 20 Simonds Street.

58.   Downstairs the officers had finally decided that the condition of Aida Gonzalez was serious had called for an ambulance.

59.   When the ambulance arrived Milbia Vazquez and Jessica Valente went outside while Aida Gonzalez was taken out and placed inside it.

60.   At this point Anthony Gonzalez arrived. He was out of breath and sweating from his run.

61.   He was immediately rushed by several officers including, upon information and belief Officers Howe, Siomos, Daoust and Ross, and perhaps Sgt. Swears. He was called "Steven" and "Omi". He was thrown against a wire fence, cutting his hands. He attempted to cooperate with the officers but they seemed to him to be in a frenzy. He attempted to show them identification to show that he was not Steven

Omar Gonzalez but before he could he was struck, maced, handcuffed and arrested.

62. Again Milbia Vasquez was trying to tell them that this was not Steven, but her son Anthony who was coming to help Aida Gonzalez. Again She was ignored.

63. At the police station Anthony Gonzalez was made sport of by the police officers. He was suffering from the effects of the mace and couldn't see. He asked to be able to wash out his eyes. One officer tapped on the eye wash station and taunted him to try and find his way to the water by sound.

64. Alexis and Adrian Gonzalez were transported in a different police unit than Anthony.

65. Adrian was still crying. He was telling his brother that he couldn't see or breath very well and asking Alexis if he was going to die. Alexis was trying to reassure him, telling him it was going to be alright. They were speaking in Spanish, their first language.

66. The officer driving the police unit, upon information and belief Officer Howe, told them there would be no speaking Spanish in his car.

67. Alexis was astonished. "I don't have a right to speak to my brother in my own language?" he said.

68. Officer Ross said: "You want your rights?" He then accelerated the car for a distance and then slammed on the brakes, launching the brothers into the glass partition between the front and back seats. "There's your rights," he told them.

69.  At the police station both boys were asked if they were gang members and Adrian was asked if Anthony was their gang leader. Both denied any affiliation with gangs.

70.  When Anthony was finally allowed to present identification to show that he was not Steven Gonzalez they harassed him as to why he had so much identification.

71.  On November 20, 2001 at approximately 5:30 PM a police officer, upon information and belief Officer Ross, returned to 20 Simonds Street. Milbia Vazquez met him on the porch outside her home.

72.  The officer said: "I'm sorry for what happened last night. What happened last night should never have happened."

73.  Milbia Vazquez was frightened. She didn't know what might happen next. She made no response. After a time the officer left.

74.  Also on November 20, 2001 17 year old Alexis Gonzalez was talking with friends on a street corner in Fitchburg when Officer Sevigny pulled up in a police car. He got out of the car and approached the young people. He addressed himself to Alexis. "Did you tell your friends what I did to you last night?" he inquired. "Make sure they know that the same thing can happen to them."

75.  Later on November 20, 2001 State Police Troopers showed up at 20 Simonds Street. They told Milbia Vazquez that they wanted to talk to her children about their affiliation with the "Latin Kings". She was terrified and asked them to leave, which they did.

76.  On November 25, 2001 Anthony Gonzalez was stopped by the Fitchburg Police on his way home from work. They demanded to see his license and registration.

Although everything was in order he was arrested for unlicensed operation of a motor vehicle. His vehicle was towed and searched. Nothing was found. The next day the charges against him were dismissed at arraignment.

77. Steven Omar Gonzalez was not at 20 Simonds Street on November 19, 2001. When he was told of the events that occurred he immediately went to the police station and presented himself. He was charged with assault and battery with a dangerous weapon, to wit, a gun. A jury at his trial found that there was no gun.

78. The charges of disorderly conduct and resisting arrest against Anthony, Alexis and Adrian Gonzalez were dismissed without a plea or a finding.

## COUNT ONE

### VIOLATION OF 42 USC s.1983
### AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS DAOUST AND SWEARS

79. The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 79 and incorporates them by reference as if fully set forth herein.

80. The unprovoked attacking, seizing, detaining, beating and maceing of the Plaintiffs by the Defendant officers constituted the use of excessive and unreasonable force in violation of the Plaintiff's rights guaranteed by the United States Constitution, including but not limited to the First, Fourth, Fifth and Fourteenth Amendments.

81. When the Defendant Officers attacked the Plaintiffs they intended to inflict, and did inflict serious physical and emotional injuries of the Plaintiffs.

82. The Defendant officers operated together in inflicting the Plaintiffs injuries and are therefore jointly liable to the Plaintiffs.

83.    The Defendant officers used excessive force during the arrest of the Plaintiffs and
       are therefore jointly liable to them for their damages. Such excessive force
       included but is not limited to intentionally slamming on the brakes during
       transport of the Plaintiffs to the police station with the specific intent of inflicting
       injury. Such excess force also includes kicking a handcuffed Plaintiff, punching a
       handcuffed Plaintiff as well as maceing and beating Plaintiffs who were
       cooperating with them and denying medical attention to a suffering Plaintiff in
       their control.

                                    COUNT TWO

     SUPERVISORY LIABILITY AGAINST SGT. SWEARS, CHIEF TASCA AND THE
                              CITY OF FITCHBURG

84.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1
       through 84 and incorporates them by reference as if fully set forth herein.

85.    Sgt. Linda Swears describes her duties on the night of November 19, 2001 at 20
       Simonds Street as that of "Street Supervisor."

86.    Chief of Police Charles Tasca, on the night of November, 19, 2001 and at all
       times relevant to this complaint, had overall supervisory authority over Sgt.
       Swears and all the officers who participated in the unlawful acts perpetrated
       against the Plaintiffs at 20 Simonds Street.

87.    The City of Fitchburg placed its authority and police power in Chief of Police
       Tasca and "Street Supervisor" Sgt. Swears.

88.    In such capacity Sgt. Swears displayed a deliberate, reckless or callous
       indifference to the Constitutional Rights of the Plaintiffs by her failure to take

                                                                                            13

control of the situation in which police officers under her control inflicted

unnecessary physical and emotional pain on the Plaintiffs. Sgt. Swears stood by

while the Defendants were subjected to excessive force in violation of the rights

guaranteed to them under the Constitution of the United States and the

Commonwealth of Massachusetts.

<u>COUNT THREE</u>

WRONGFUL ARREST
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

89.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 89 and incorporates them by reference as if fully set forth herein.

90.    The Defendant officers had neither probable cause or reasonable grounds to arrest

the Plaintiffs Anthony, Alexis and Adrian Gonzalez at the time they were taken

into custody and therefore violated their rights under the Fourth Amendment.

<u>COUNT FOUR</u>

FALSE IMPRISONMENT
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

91.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 91 and incorporates them by reference as if fully set forth herein.

92.    The Defendant officers had neither probable cause or reasonable grounds to

handcuff the Plaintiffs Antonio, Anthony, Alexis, Alexander and Adrian Gonzalez

and therefore violated their rights under 42 USC s. 1983 and the Fourth and

Fourteenth Amendments by depriving them of their liberty.

<u>COUNT FIVE</u>

ASSAULT AND BATTERY
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

93.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 92 and incorporates them by reference as if fully set forth herein.

94.    The Physical abuse and assault and battery on the Plaintiffs by the Defendant

officers which took place in and around 20 Simonds Street was not warranted and

violated the Plaintiffs rights as protected by the Fourth and Fourteenth

Amendments, the Massachusetts Declaration of Rights and the Common Law of

the Commonwealth of Massachusetts.

## COUNT SIX

MALICIOUS PROSECUTION
AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS
DAOUST AND SWEARS

95.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 95 and incorporates them by reference as if fully set forth herein.

96.    The Defendant officers caused Plaintiffs Anthony, Alexis and Adrian Gonzalez to

be falsely prosecuted for crimes they did not commit.

97.    The Defendant officers were aware that no probable cause existed to arrest the

Plaintiffs Anthony, Alexis and Adrian Gonzalez for the crimes with which they

were charged.

98.    All charges against the Defendants Anthony, Alexis and Adrian Gonzalez were

subsequently dismissed without a plea or a finding.

99.    The motivations of the Defendant officers behind the false and malicious

prosecution of Anthony, Alexis and Adrian Gonzalez included but may have not

been limited too their desire to cover their own violations of law as set forth

herein.

## COUNT SEVEN

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS DAOUST AND SWEARS

100.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 100 and incorporates them by reference as if fully set forth herein.

101.    When the Defendant officers assaulted and attacked the Plaintiffs as described

herein they intended to inflict emotional distress, or they knew or should have

know that emotional distress was the likely result of their conduct.

102.    The acts of brutality, coercion and intimidation inflicted by the Defendant

officers, acting under the color of law, are an extreme, callous and outrageous

abuse of power, beyond the pale of reasonableness in civilized society. Such acts

are intolerable and would shock the conscience of any community.

103.    As a result of the conduct of the Defendant officers the Plaintiffs have suffered

and continue to suffer extreme emotional distress and anxiety. Consequently, the

Defendant officers are jointly liable to the Plaintiffs for intentional infliction of

emotional distress.

## COUNT EIGHT

### ABUSE OF PROCESS
### AGAINST DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS DAOUST AND SWEARS

104.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 104 and incorporates them by reference as if fully set forth herein.

105.  The Defendant officers abused their positions and used process for an ulterior

and/or illegitimate purpose by arresting the Plaintiffs Anthony, Alexis and Adrian

Gonzalez in order to cover their own violations of law. Such purpose was other

than that for which it was designed or intended and such abuse of position and

process resulted in damage to the Plaintiffs.

<u>COUNT NINE</u>

VICARIOUS LIABILITY AGAINST DEFENDANT CHARLES TASCA

106.  The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

through 106 and incorporates them by reference as if fully set forth herein.

107.  The Plaintiffs assert that under the broadest principles of vicarious liability the

Defendant Chief Charles Tasca, as a matter of policy and practice has shown

deliberate indifference to the rights and immunities of the citizens who come into

contact with his police officers in the City of Fitchburg. Plaintiffs allege that the

Fitchburg Police are particularly indifferent to the rights of Hispanic citizens.

108.  Defendant Chief Charles Tasca was the chief policy maker for the Fitchburg

Police Department and as such he has allowed it to become, or knew or should

have known that it had become the custom and practice of Fitchburg police

officers, including but not limited to those named in this complaint, to be

physically, verbally and mentally abusive with citizens that they come into

contact with while performing their duties. The Plaintiffs allege that this

indifference is clear in the Hispanic Community.

109.  The Defendant Chief Charles Tasca was aware of complaints filed against officers

of the Fitchburg Police Department, formal and informal, public and private,

17

including but not limited to some of the officers charged in this complaint, and has shown a deliberate indifference to the fact that police officers under his charge are violating the Civil Rights of citizens in his community. The Plaintiffs allege that a majority of the complaints filed are by Hispanic or other minority Complainants and as such are ignored as a matter of policy and or custom as a result of deliberate indifference.

110.   Despite the fact that he has been aware situations leading to complaints against officers of the Fitchburg Police Department, the Defendant Chief Charles Tasca failed to promulgate and/or enforce regulations to restrict police officers from being physical with individuals they come in contact with in the course of their duties.

111.   As a result of the Defendant Chief Charles Tasca deliberate indifference to the abusive actions of the officers under his charge, formal and through investigations of allegations of police brutality are not performed. The Plaintiffs allege that this is plainly evident with regard to Complaints filed by minorities.

112.   The failure of Defendant Charles Tasca to perform his duties effectively as a policy maker for the Fitchburg Police Department, by actions and/or omissions while acting under the color of state law, he has deprived the Plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United States, including but not limited to the right to be secure in their person and property, to be free from excessive use of force and to be free from the imposition of punishment without having been convicted of a crime.

## COUNT TEN

## MUNICIPAL LIABILITY AGAINST THE CITY OF FITCHBURG PURSUANT TO 42 U.S.C. s. 1983

113.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 113 and incorporates them by reference as if fully set forth herein.

114.    Prior to the time of the events described in this Complaint, the Defendant City of Fitchburg maintained or permitted and acquiesced in policies or customs which constituted deliberate indifference to the Constitutional rights of citizens of the City of Fitchburg, which resulted in the deprivation of the Plaintiffs rights as set forth herein.

115.    The Defendant City of Fitchburg failed to properly supervise its police officers, failed and neglected to investigate complaints of police misconduct or inadequately and improperly investigated complaints of police misconduct and tolerated and condoned a policy of violence and abuse by its police officers.

116.    The Defendant City of Fitchburg through it elected and appointed officials knew or should have known the number of instances of the use of excessive force or other misconduct of its police officers, but despite such knowledge failed to correct and address the problem thereby constituting deliberate indifference to the rights of the citizens of the City of Fitchburg, including these Plaintiffs.

117.    The policies and customs, or the lack thereof, alleged herein and the willingness of the City of Fitchburg to condone the same, were the cause of the injuries suffered by the Plaintiffs and were the cause of the deprivation of the rights suffered by the Plaintiffs in violation of 42 U.S.C. s. 1983.

## COUNT ELEVEN

### NEGLIGENCE
### AGAINST THE DEFENDANT CITY OF FITCHBURG, DEFENDANT CHIEF CHARLES TASCA AND DEFENDANT OFFICERS SEVIGNY, HOWE, SIOMOS, DIBARRA, ROSS DAOUST AND SWEARS

118.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1 through 118 and incorporates them by reference as if fully set forth herein.

119.    The Plaintiffs state that a notice of claim was provided to the Executive Officer of the City of Fitchburg pursuant to MGL c. 258 s. 4 on or about August 1, 2002 and six months has passed since the date of such notice of claim was served upon said Executive Officer without response from the City of Fitchburg and that at this time this claim of negligence is ripe and the Plaintiffs make this claim for relief.

120.    The Defendant police officers owe a duty to these Plaintiffs and all the citizens of the City of Fitchburg to use only reasonable force to apprehend suspects and to refrain from the use of excessive force when doing so.

121.    The Defendant police officers breached their duty to the Plaintiff citizens when they used excessive force in beating, maceing, detaining, handcuffing, subduing, threatening and intimidating them.

122.    The Defendant Chief Charles Tasca and the Defendant City of Fitchburg owe a duty to the citizens of the City of Fitchburg to properly train and supervise their police officers in the use of force and intervention in the use of excessive force by other police officers.

123.    Such Defendants breached their duty and the direct and proximate cause of their breach was the harm herein described to the Plaintiffs.

124.    The Defendant Chief Charles Tasca and the Defendant City of Fitchburg are

        liable to the Plaintiffs for the negligent actions of their employees.

COUNT TWELVE

VIOLATION OF MGL c. 93A BY DEFENDANT MASSAMONT INS. AGENCY, INC.
and/or METROGARD INS. and/or DIPLOMAX INS. and/or LEGION INS. COMPANY

125.    The Plaintiffs repeat and reassert the allegations contained in paragraphs 1

        through 125 and incorporates them by reference as if fully set forth herein.

126.    The Defendant Massamont Ins. Agency, et.al. has employed unfair and deceptive

        acts in violation of MGL c. 93A s. 11 and c. 176D s. 9(3). Such acts include but

        are not limited to: failing to adopt reasonable standards for the prompt

        investigation and settlement of claims arising under its policy; failing to effectuate

        a prompt, fair and equitable settlement of the Plaintiffs claims; compelling its

        insured to institute suit to recover amounts due; unreasonably delaying payment

        of claims and misleading the Plaintiff about its coverage.

127.    The Defendant has demonstrated a lack of good faith in dealing with the Plaintiff

        and has acted unscrupulously.

128.    The Defendants actions were knowing and willful.

PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court:

1.    Use its fulles equitable powers to order the individual Defendants:

        a.    to use only reasonable force in the performance of their duties.

     b.    To intervene when excessive force is used by other police officers in the course of an arrest, and

     c.    To report to superiors the use of, and injures caused during the use of excessive force;

     d.    To write complete and truthful police reports;

2.    Use its fullest equitable powers to order the City of Fitchburg, acting through its officials, to institute appropriate police training, supervisions and disciplinary actions that will require and promote:

     a.    Only the use of reasonable force by police officers;

     b.    The intervention of police officers when they observe other officers engaged in the use of excessive force;

     c.    Police officers reporting injuries resulting from any use of excessive force;

3.    Use its fullest equitable powers to order the City of Fitchburg, acting through its officials, to institute appropriate police training and procedures for the use of force against the City's citizens.

4.    Order Judgement in the Plaintiffs favor in the amount of Fourteen Million Dollars ($14,000,000), Two Million Dollars ($2,000,000) to each Plaintiff to compensate them for their pain and suffering.

5.    Order such punitive damages as are allowed by law.

6.    Order payment of interest, costs and fees.

7.    Order such further relief as this Court deems fair and just.

**JURY DEMAND**

Plaintiffs demand trial by jury on all counts.

The Plaintiffs
By Their Attorney

Edwin J. Attella
BBO# 636527
PO Box 255
West Boylston, MA 01583
Telephone: (508) 835-5881

CERTITICATE OF SERVICE

I, Edwin J. Attella, hereby certify that I have on this date forwarded a copy of the foregoing document by mailing a true copy of same, postage prepaid to:

Jackie Cowin, Esq.
KOPELMAN AND PAIGE, PC
Attorneys at Law
31 St James Avenue
Boston, MA 02116-4102

_____  4-8-04
Edwin J. Attella    Date

24