UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-40018-FDS

| | |
|---|---|
| AIDA GONZALEZ, ANTONIO GONZALEZ, MILBIA VAZQUEZ, ANTHONY GONZALEZ, ALEXIS GONZALEZ, ALEXANDER GONZALEZ, and ADRIAN GONZALEZ,<br><br>       Plaintiffs<br>v.<br><br>CITY OF FITCHBURG, CHARLES TASCA, Chief of Police, LINDA SWEARS, MICHAEL SEVIGNY, JEFFREY HOWE, KERRY SIOMOS, JR., MATTHEW DIBARA, ALAN ROSS, THOMAS DAOUST, MASSAMONT INS. AGENCY, INC. and/or METROGARD INS. and/or DIPLOMAX INS. and/or LEGION INS. COMPANY,<br><br>       Defendants | MEMORANDUM IN SUPPORT OF CITY OF FITCHBURG AND CHARLES TASCA'S MOTION <u>FOR SUMMARY JUDGMENT</u> |

I.   <u>INTRODUCTION</u>

In this action, the plaintiffs, all members of the Gonzalez family, assert civil rights violations and common-law torts arising from a search of their home by police officers for the City of Fitchburg (the "City") on November 19, 2001. Counts I and III of the Complaint assert constitutional claims for excessive force and false arrest, respectively, against the seven officers who conducted the search (the "individual defendants"). Counts IV-VIII assert intentional torts against the individual defendants. Count II asserts a claim for supervisory liability against defendant Linda Swears, a Sergeant who took part in the search.[1] Count IX, which is labeled "vicarious liability," appears to assert a supervisory liability claim against Charles Tasca ("Tasca"), the City's Chief of Police. Count X asserts municipal liability against the City.

---

[1] Count II is labeled as being pled against Swears, Police Chief Charles Tasca and the City, however the text of Count II references Swears only.

Count XI asserts negligence against the City. Count XII asserts claims against the City's insurers.

The City and Tasca seek summary judgment on all claims against them. The within Memorandum is submitted in support of their motion.

II.     STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the City and Tasca's Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987). The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

IV.   ARGUMENT

    A.   Plaintiffs Fail to Establish Municipal or Supervisory Liability (Counts IX-X)

Plaintiffs seek to impose liability upon the City and Tasca for the alleged conduct of the individual defendants.[2] Complaint, Counts IX-X.[3] It is axiomatic that neither municipal nor supervisory liability may be predicated upon a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor" (emphasis in original)); Febus-Rodriguez v. Betancourt-Lebrón, 14 F.3d 87, 91 (1st Cir.1994) ("[s]upervisory liability may not be predicated upon a theory of *respondeat superior*"). Rather, municipal liability may be established only when some municipal "policy or custom" causes the alleged injury, Monell, 436 U.S. at 691-694, 98 S.Ct. 2018, while "a supervisor may be found liable only on the basis of his own acts or omissions." Febus-Rodruiguez, 14 F.3d at 91-92.

More specifically, to establish liability against the City, the plaintiffs must show that the conduct of which they complain "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City's] officers," or was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the [City's] official decisionmaking channels." Monell, 436 U.S. at 690-691, 98 S.Ct. 2018. To establish liability against Tasca, plaintiffs must establish that he "formulate[d] a policy or engage[d] in a practice that [led] to a civil rights violation committed by" his officers. Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir.1998).

---

[2] Plaintiffs do not allege that Tasca was personally involved in the events underlying the Complaint, or otherwise directly violated plaintiffs' constitutional rights. Statement, ¶11.

[3] Counts IX and X reverse the standards applicable to claims for municipal and supervisory liability. The City and Tasca address plaintiffs' municipal and supervisory claims as co-extensive, as the evidence set forth by said defendants negates both theories of liability.

In either case, the plaintiffs must show that the City and/or Tasca demonstrated "deliberate indifference" to the commission of constitutional violations by the City's officers. See Foley v. City of Lowell, 948 F.2d 10, 14 (1st Cir. 1991) (municipal liability requires proof of "a municipal custom or policy of deliberate indifference to the commission of constitutional violations by police officers"); Febus-Rodruiguez, 14 F.3d at 92 ("a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others"). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a [State] actor disregarded a known or obvious consequence of his action." County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997). To demonstrate deliberate indifference, plaintiffs must show "(1) an unusually serious risk of harm, (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir.1992).

Essentially, the plaintiffs must show that the practices of which they complain, whether they be municipal or supervisory, "amounted to condonation or tacit authorization" of the individual defendants' alleged wrongful conduct. Rogan v. Menino, 175 F.3d 75, 78 (1st Cir.1999); see also Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (supervisor may be liable for behavior of subordinates where his action or inaction "could be characterized as supervisory encouragement, condonation or acquiescence" of the wrongful behavior); Foley, 948 F.2d at 14-15 (plaintiff proved municipal liability by establishing a "policy of tolerance" of police brutality).

In this case, the plaintiffs allege that the City and Tasca engaged in a custom and policy of failing to investigate citizen complaints of excessive force by police officers, particularly

4

complaints of Hispanic citizens, and of failing to discipline officers for use of excessive force. Complaint, ¶¶108-109, 111, 115-116.  These failures, the plaintiffs assert, demonstrate deliberate indifference to the use of excessive force against citizens, particularly Hispanic citizens.[4]  Id. Compare Bordanaro v. McLeod, 871 F.2d 1151, 1162 (1st Cir.1989) ("[t]he absence of a strictly enforced disciplinary system led the officers ... to believe they were above the law and would not be sanctioned for their misconduct").

    The plaintiffs further allege that Tasca failed to promulgate and enforce regulations regarding excessive force, Complaint, ¶110, and also make passing reference to an alleged failure by the City and Tasca to properly train their officers.  Complaint, Introduction; compare City of Canton v. Harris, 489 U.S. 378, 388-89, 391, 109 S.Ct. 1197 (1989) (liability will attach to municipality where failure to train officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact," and a specific deficiency in training causes constitutional injury).

    However, as explained in detail below, plaintiffs offer no evidence supporting their claim that the City and Tasca ignore complaints of excessive force, or otherwise fail to address a known risk of harm.  To the contrary, the undisputed evidence establishes that the City and Tasca rigorously investigate all complaints of officer misconduct, and administer discipline in a manner that would lead no reasonable officer to believe that unconstitutional conduct is tolerated. Moreover, the undisputed evidence demonstrates that the City and Tasca promulgate and enforce adequate regulations regarding excessive force, and train their officers extensively.

---

[4]Plaintiffs do not assert any custom or policy of permitting wrongful arrests.

1. <u>The Department's Investigation of Citizen Complaints</u>

The unrebutted evidence in this case demonstrates that, far from ignoring complaints of excessive force, the Fitchburg Police Department (the "Department") diligently investigates such complaints and imposes appropriate discipline where necessary.

As an initial matter, citizens are afforded every opportunity to file a complaint against a police officer. Pursuant to the Department's formal policy, no person may be denied an opportunity to file a complaint, and any attempt to obstruct an investigation into a citizen complaint, or to persuade a complainant to withdraw a complaint, is prohibited, "and will be treated most severely." <u>Statement</u>, ¶14. A citizen may file a complaint by telephone, letter, or in person. <u>Id.</u>, ¶15. Complaints may be made anonymously. <u>Id.</u> Shift Commanders, who are responsible for receiving citizen complaints, are directed to extend "the utmost courtesy and cooperation" to the complainant. <u>Id.</u>, ¶16. Each complaint is recorded on a standard form, a copy of which is provided to the complainant. <u>Id.</u>, ¶17. Complainants are encouraged to sign the form, but neither a signature nor identification of the complainant is required. <u>Id.</u> A complaint will be investigated even if the complainant provides incomplete information. <u>Id.</u>

Failure to follow these procedures – or indeed any Departmental procedure – due to an individual's status, including race, constitutes official misconduct under the Department's formal Policies and Procedures, and is subject to sanction. <u>Statement</u>, ¶33.

Departmental policy further requires that all instances of alleged misconduct be investigated, and that investigations into citizen complaints be conducted "with the same degree of professional competence as is devoted to a criminal investigation." <u>Statement</u>, ¶14. Each complainant must be notified, in writing, of the results of the investigation into his/her complaint. <u>Id.</u>

Specific procedures are set forth for the investigation of citizen complaints.  Complaints of a minor nature are to be resolved immediately by the Shift Commander, if possible, while complaints alleging serious misconduct, including brutality, excessive force, and civil rights violations, are investigated by the Department's Internal Affairs Unit ("IAU").  Statement, ¶18. An IAU investigation into a citizen complaint must be commenced "forthwith," and completed within 90 days.  Id., ¶19.

Each IAU investigation includes a review of any police report generated during the incident at issue, interviews of the complainant, the officer that is the subject of the complaint, and any witnesses to the incident, including other officers.  Statement, ¶20.  An officer who does not respond completely and truthfully to an IAU inquiry is subject to discipline, including dismissal from the Department.  Id.  The Department may require an officer to submit to a medical or psychological exam, be photographed, or take part in a lineup during an IAU investigation.  Id., ¶21.

Departmental policy also ensures that well-founded complaints of officer misconduct will be reviewed and addressed by the highest authorities.  A written report on each IAU investigation is submitted to the Chief of Police, even if the complaint is withdrawn by the complainant.  Statement, ¶22.  The report includes all evidence gathered during the investigation, an evaluation of the complaint, a disposition of the complaint, and a recommendation as to whether discipline is warranted and, if so, what type.  Id., ¶¶22, 24.  The Chief reviews each report, and imposes discipline where warranted.  Id., ¶24.  Disciplinary measures may be in the form of "positive discipline," such as an assignment to further training, or "negative discipline," which may include a verbal reprimand, "statement of counseling," a written reprimand, punishment duty, anger management counseling, or a suspension of up to five days.  A

suspension of longer than five days, or termination, may be imposed by the Mayor, who is the City's appointing authority.  Id.

In order to keep apprised of the extent of complaints against its officers, the Department keeps statistics on the number of citizen complaints filed each year, and the disposition of each. Statement, ¶25.  These statistics are published in the Department's Annual Report, which is available to the public.  Id.  The Annual Reports show that from 1996 through 2000, the Department received and investigated between 15 and 31 citizen complaints each year.  Id.  Each year, between two and eight complaints were substantiated, and discipline was imposed as a result of each one.  Id.

Plaintiffs submit no evidence that the Department's investigation or disciplinary procedures are deficient in any way.  They identify no specific instance in which the Department is even alleged to have failed to adequately investigate or discipline any officer accused of misconduct.  Indeed, plaintiffs cannot even establish that the Department failed to investigate the alleged incident here, as plaintiffs did not file a complaint with the Department prior to bringing suit. Statement, ¶26.

Contrary to plaintiffs' contentions, the Department's disciplinary system would not lead Fitchburg police officers "to believe they were above the law and would not be sanctioned for their misconduct."  Bordanaro, 871 F.2d at 1162 (finding municipal liability where expert testified that city's review of civil complaints of officer misconduct "fell well below accepted levels," "many complaints were placed in a dead letter drawer never to be seen again," and "discipline had been meted out haphazardly, inconsistently, and infrequently").  Indeed, the disciplinary records of the individual defendants demonstrate both that (1) the Department complies with its formal policies for investigating and addressing civilian complaints of

8

misconduct; and (2) these officers could not reasonably believe that instances of excessive force or racial discrimination would be tolerated.

Specifically, the record shows that in the 10 years prior to the incident underlying this case, no citizen complaints were filed against Sgt. Swears. Statement, ¶28. Similarly, in the 10 years prior to the incident underlying this case, no citizen complaint alleging discrimination of any kind was filed against any of the defendant officers. Id., ¶29.

During that same period, a total of eight civilian complaints of abuse or mistreatment, of either a physical or verbal nature, were filed against the seven defendant officers combined. Statement, ¶30. Each of these complaints was investigated pursuant to the procedures set forth above. Id. One investigation resulted in Exoneration of the subject officer, while five of the complaints were Not Sustained. Id., ¶31.

Two complaints were Sustained. Each of these complaints was directed at a different officer, and discipline was imposed in each case. Statement, ¶32. In one instance, the subject officer received five days of punishment duty for using abusive language toward a third party during an arrest. Id. In the other instance, the subject officer received a statement of counseling for mishandling an incident whereby an individual interfered in the arrest of another. Id.

As a preliminary matter, this evidence negates the possibility that plaintiffs may prove the City and Tasca ignored "an unusually serious risk" that citizens would suffer the type of harm plaintiffs allege. Manarite, 957 F.2d at 956. The existence of only two sustained complaints of abuse – one of which alleged verbal abuse and the other of which was deemed of minor nature – could not have alerted the City and Tasca that any of these officers had a propensity to use excessive force. Similarly, the absence of any complaint of racial discrimination belies any knowledge by the City and Tasca that these officers were likely to engage in such conduct.

Absent notice that any of the defendant officers was likely to engage in excessive force or racial discrimination, the City and Tasca cannot be said to have been deliberately indifferent to a risk that these officers would violate the plaintiffs' rights in this manner. Febus-Rodriguez, 14 F.3d at 93 (it is "[a]n important factor ... whether [the supervisor] was put on notice of behavior which was likely to result in the violation of ... constitutional rights"); Brown, 520 U.S. at 412, 117 S.Ct. at 1392 ("finding of culpability … must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular [officer] and the specific constitutional violation alleged must be strong.'' (emphasis in original)). Accordingly, plaintiffs' claim that the City and Tasca are liable for the officers' alleged use of excessive force and racial discrimination fails on this basis alone.

Moreover, the City and Tasca's disciplinary actions against these officers negate the possibility that the plaintiffs may prove a "failure to take easily available measures" to address any risk these officers might have foreseeably posed to the public. Camilo-Robles, 151 F.3d at 7. As noted, each substantiated complaint of abuse resulted in discipline against the subject officer. The discipline meted out was serious, as demonstrated by the imposition on one officer of five days punishment duty for verbal abuse. Certainly, these sanctions would not lead the officers to believe they could commit abusive behavior without consequence.

The City and Tasca's actions in this case are starkly dissimilar to actions in cases where a plaintiff has proved deliberate indifference to officer misconduct. See, e.g., Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 49 (1st Cir. 1999) (deliberate indifference shown where officer had been disciplined 30 times, resulting in recommendations of dismissal six times, yet defendant supervisor ignored recommendation of dismissal and imposed 15-day suspension, and reduced another 30-day suspension to two days); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562-

66 (1ˢᵗ Cir.1989) (deliberate indifference shown where officer was the subject of 13 civilian complaints, many of them for brutal behavior, in a span of three years, yet supervisor dismissed all but one complaint with little or no investigation, gave officer positive performance evaluations and continued to assign him to active duty; on 'one or two occasions' he assigned officer to desk duty, officer demanded to be returned to street and supervisor complied); Bordanaro, 871 F.2d at 1160, 1162 (disciplinary procedures by mayor and police chief amounted to a "do nothing policy" that "exposed the citizens of [the City] to imminent police misconduct").  In contrast to these cases, the City and Tasca's disciplinary procedures do not, as a matter of law, comprise "deliberate indifference" to a known or obvious risk of constitutional injuries to members of the public.  As such, plaintiffs' claim that the City and Tasca should be liable for the officers' alleged use of excessive force and racial discrimination fails on this additional basis.

        2.        The Department's Force Policy

As noted, the plaintiffs also allege that Tasca failed to promulgate and enforce regulations regarding excessive force.  Complaint, ¶110.  The undisputed evidence negates this claim.

Specifically, the evidence shows that the Department has promulgated a detailed policy on use-of-force (the "Force Policy"), which emphasizes that an officer may use "only the force reasonably necessary" for self-defense and to effect a lawful arrest.  Statement, ¶34.  The Force Policy incorporates the "Force Continuum," a guide to the proper amount of force to be used in bringing an incident under control.  Id., ¶35.  The Continuum instructs officers on the different types of force available – including verbal commands, physical maneuvers, use of batons, chemical spray, and lethal force – and the circumstances under which it is appropriate to use each type of force.  Id.  The Force Policy also provides that any officer who uses force shall file a

written report regarding the use of force, which shall be reviewed by the Shift Commander and other ranking officers. Id., ¶36. The Force Policy, like all of the Department's policies, is reviewed, page-by-page, during each officer's initial in-house training, and again during annual in-house training. Id., ¶39.

Further, allegations that an officer violated the Force Policy are subject to the investigation and disciplinary procedures outlined in Section IV-A(1), supra. As such, plaintiffs' claim that their injuries were caused by Tasca's failure to promulgate and enforce regulations regarding excessive force must fail.

     3.     The Department's Training Procedures

Finally, the unrefuted evidence negates plaintiffs' passing claim that the City and Tasca fail to properly train their officers. In fact, the evidence shows that the training provided Fitchburg officers is far superior to that which has been approved by this Court.

Specifically, the evidence shows that, after attending state-mandated training at the Police Academy, all Fitchburg officers receive one to three weeks of Departmental training, during which officers attend a course where a supervising officer conducts a page-by-page review of the Department's Policies and Procedures. Statement, ¶¶38-39. Each new officer then undergoes "field training," in which he/she is assigned to work with a veteran officer. Id., ¶40. The duration of field training varies with the needs of the individual officer. Id.

All officers also attend 32 hours of In-Service Training each year, which is provided by the State and includes training in proper use-of-force. Statement, ¶41. In addition, all officers must attend a day of in-house training each year, which includes further review of the Department's Policies and Procedures. Id. To ensure that officers are kept updated on the law, the Department issues training bulletins which explain recent changes in the law, and the Police

Chief issues General Orders which incorporate legal changes into the Department's Policies and Procedures.  Id., ¶42.

In addition to In-Service Training, officers are frequently authorized to attend specialized training courses that are provided by the Department's training staff, the Municipal Police Training Committee, the State Police, and various State, Federal and independent organizations. From 1996 through 2000, the Department's officers (approximately 90 in number) received between 4,952 and 11,187 hours of training each year, exclusive of that received at the academies.  Statement, ¶43.

As a preliminary matter, plaintiffs do not identify any "specific deficiency" in these training procedures that might have caused the injuries that they allege.  See City of Canton, 489 U.S. at 388-89, 109 S.Ct. 1197; see also Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) (failure-to-train claim failed where plaintiff did not specify how training in constitutional issues for city's police officers was inadequate).  Moreover, plaintiffs cannot show that these training procedures evidence "deliberate indifference" by the City and Tasca to the rights of the persons with whom the police come into contact.  See City of Canton v. Harris, 489 U.S. 378 at 391, 109 S.Ct. 1197.  Indeed, the training provided by the City is far superior to that which this Court has held sufficient to preclude a failure-to-train claim.  See, e.g., Santiago v. Fenton, 891 F.2d 373, 380-82 (1st Cir.1989) (failure-to-train claim failed where defendant police officer received only four hours of constitutional law training at police academy; did not officially receive notice of changes in the law; was not aware of any incentives for pursuing further training, and had never received a policy manual); Swain v. Spinney, 117 F.3d 1 (1st Cir.1997) (rejecting failure-to-train claim in unlawful strip search case, where every officer was supplied with strip search policy guidelines, including periodic updates – even though not all officers had a consistent

13

understanding of those materials). As such, plaintiffs cannot prove that their alleged injuries were a result of a failure to train the City's police officers, and their claims for municipal and supervisory liability fail.

    B.    <u>Plaintiffs Fail to Establish Negligence (Count XI)</u>

Count XI asserts that the City is also liable in negligence –vicariously, based on the individual officers' alleged negligence, and/or directly, for a negligent failure to train and supervise. <u>Complaint</u>, ¶¶120-122.[5] These claims should be dismissed, for the reasons explained below.

    1.    <u>Plaintiffs' Negligence Claims Fail Due to Lack of Sufficient Presentment</u>

As an initial matter, plaintiff's claims for negligence should be dismissed due to lack of sufficient presentment, which is a condition precedent to bringing suit against a municipality under G.L. c.258, the Massachusetts Tort Claims Act. <u>See</u> G.L.c. 258, §4; <u>Krasnow</u> v. <u>Allen</u>, 29 Mass.App.Ct. 562, 566, 562 N.E.2d 1375 (1990).[6] The presentment requirement includes both procedural and substantive prerequisites, in that the letter must be timely submitted to the correct party, and must contain adequate notification of a claim, so that the responsible public official "can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." <u>Rodriguez</u> v. <u>Cambridge Housing Authority</u>**,** 59 Mass.App.Ct. 127, 134, 795 N.E.2d 1 (2003). "The presentment letter should be 'precise' in

---

[5]Plaintiffs also assert negligence against Tasca, as well as the individual officers. This claim must be dismissed against Tasca and the individual officers pursuant to G.L. c.258, §2, which immunizes public employees from liability for negligent acts. A municipality may be held vicariously liable for the negligent acts of its employees. <u>See</u> G.L. c.258, §2.

[6] Specifically, G.L. c. 258, §4 provides in pertinent part: "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless [a] claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."

14

identifying the basis of the claim." Id., 59 Mass.App.Ct at 134, 795 N.E.2d 1 (quoting Gilmore v. Com., 417 Mass. 718, 723, 632 N.E.2d 838 (1994)).

In this case, plaintiffs' presentment letter did not fairly notify City officials of the bases for liability asserted in Count XI, because the letter contains no reference whatsoever to any alleged negligence by the City or the defendant police officers. Statement, ¶44. Instead, the letter alleges only constitutional violations, and intentional torts by the individual officers for which the City may not be held liable. Id.; see also G.L. c.258, §10(c). As such, the letter "cannot fairly be read as stating claims for negligent" torts. Tambolleo v. Town of West Boylston, 34 Mass.App.Ct. 526, 533, 613 N.E.2d 127 (1993). In Tambolleo, the Court held that presentment letters which asserted assault and bodily injury by a police officer were insufficient to permit plaintiffs to proceed against the Town for negligent supervision and emotional distress, since "the sole claim made in the plaintiffs' letters was one barred by" the Tort Claims Act. Id. Here, as in Tombolleo, "[t]he instant letters do no more than make a claim on the basis of an identified act for which immunity has been expressly provided," and, therefore, would not serve to prompt the City to investigate plaintiff's claims for any purpose contemplated under the Tort Claims Act. Id.; see also Wightman v. Methuen, 26 Mass.App.Ct. 279, 282, 526 N.E.2d 1079 (1988). (plaintiff, whose son was injured during schoolyard incident, was prohibited from bringing negligence claim against town based on failure to seek medical assistance, since presentment letter spoke only of failure to supervise schoolyard). "Failure to comply with the presentment requirement is fatal." Tivnan v. Registry of Motor Vehicles, 50 Mass.App.Ct. 96, 103, 734 N.E.2d 1182 (2000). Therefore, plaintiffs' claims for negligence should be dismissed.

> 2. Plaintiffs Fail to Substantively Establish a Claim for Negligent Training and Supervision

Plaintiffs' claims for negligent training and supervision should also be dismissed on substantive grounds. Plaintiffs' claim of negligent training should be dismissed because, as explained above, plaintiffs proffer no evidence that the training of the City's officers was deficient, while the City has provided affirmative evidence that the training of its officers far exceeded state-law requirements. "[C]ompliance with a statute or regulation [is] prima facie evidence of due care." Parker v. Town of Swansea, 270 F.Supp.2d 92, 102 (D.Mass. 2003, Dein, M.J.); see also Rochleau v. Town of Millbury, 115 F.Supp.2d 173, 179 (D.Mass.2000, Gorton, J.). As plaintiffs provide no evidence rebutting the City's evidence that its officers' training exceeded statutory mandates, plaintiffs cannot establish that the City breached its duty to train its police officers, and this claim should therefore be dismissed. See Parker, 270 F.Supp.2d at 102 ("in the absence of any evidence offered by [plaintiffs] that the Town failed adequately to train its officers, and in the face of evidence of the officers' training in compliance with the requirements of state statutory regulations, [plaintiffs] fail to show a breach of any duty of the Town"); Rochleau, 115 F.Supp.2d at 179 (dismissing claim that Town failed to train its officers in providing medical care to detainees, where plaintiffs produced no evidence that such training was not provided, and Town presented evidence that it complied with state requirements relating to the training of officers in medical care).

Similarly, plaintiffs have offered no evidence to establish negligent supervision, which requires proof that the City (1) knew or should have known that the officers had a proclivity to commit misconduct; and (2) failed to take corrective action. See Copithorne v. Framingham Union Hosp., 401 Mass. 860, 865, 520 N.E.2d 139 (1988).

Plaintiffs' negligent supervision claim fails, because, as explained above, the defendant officers' records are insufficient to put the City on notice of a serious risk that these officers might commit the conduct complained of here, and, further, the City took measures to ensure that such conduct would not occur. As such, plaintiffs cannot establish a negligent supervision claim. Contrast Dobos v. Driscoll, 404 Mass. 634, 537 N.E.2d 558 (1989) (plaintiff proved negligent supervision where defendant officer had lengthy history of misconduct, including abuse of girlfriend, several instances of abusive behavior toward motorists, and disciplinary infractions that resulted in recommendation that officer have no direct contact with public).

      3.   Plaintiffs Fail to Substantively Establish a Claim for Vicarious Negligence

Plaintiffs also claim that the City is liable because the individual defendants breached their duty "to use only reasonable force to apprehend suspects and to refrain from the use of excessive force." Complaint, ¶120. As an initial matter, the Court should "look not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts," and dismiss plaintiffs' claim of negligence as wholly unsupported by the Complaint, which explicitly asserts unconstitutional and intentional, rather than negligent, conduct. Schenker v. Binns, 18 Mass.App.Ct. 404, 406-407, 466 N.E.2d 131 (1984) (denying motion to amend complaint to add assault and battery claim based on conduct that was clearly negligent).

Moreover, plaintiffs' claim for negligence is precluded by their claim for excessive force. "The pertinent question" in a claim for excessive force "is whether the force used was 'objectively reasonable' … that is, whether it was consistent with the amount of force that a reasonable police officer would think necessary." Gaudreault v. Municipality of Salem, 923 F.2d 203, 205 (1st Cir.1990). Irrespective of whether the officers' conduct in this case passes or fails this inquiry, resolution of the question will moot plaintiffs' negligence claim, since

"negligence" is defined as "the failure to exercise that degree of care which a reasonable person would exercise in the circumstances." Morgan v. Lalumiere, 22 Mass.App.Ct. 262, 493 N.E.2d 206 (1986). Plaintiffs' negligence claim cannot survive a resolution of their excessive force claim, since a finding favorable to the defendants on the latter claim will preclude a finding that the defendants acted unreasonably, and therefore negligently, while a finding favorable to the plaintiffs will bar a negligence claim as duplicative. See Joyce v. Town of Tewksbury, 112 F.3d 19, 22 (1st Cir.1997) ("the ultimate touchstone [of the Fourth Amendment] is one of reasonableness"). Therefore, plaintiffs' negligence claim against the City should be dismissed for this additional reason.

IV. CONCLUSION

WHEREFORE, the City of Fitchburg and Charles Tasca request that this Court enter summary judgment in their favor and dismiss all counts against them.

DEFENDANTS

CITY OF FITCHBURG and
CHARLES TASCA,

By their attorneys,

/s/Joseph L. Tehan, Jr.
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116
617-556-0007

271353/METG/0539

I, Jackie Cowin, certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, on or before February 1, 2006. /s/Jackie Cowin.

Case 4:04-cv-40018-FDS   Document 53   Filed 01/31/2006   Page 19 of 19